| | |
|---|---|
| 1 | JAN I. GOLDSMITH, City Attorney |
| | DANIEL F. BAMBERG, Assistant City Attorney |
| 2 | GEORGE F. SCHAEFER, Deputy City Attorney (SBN 139399) |
| | KRISTIN M. J. ZLOTNIK, Deputy City Attorney (SBN 190694) |
| 3 | Office of the San Diego City Attorney |
| | 1200 Third Avenue, Suite 1100 |
| 4 | San Diego, California 92101-4100 |
| | Telephone:  (619) 533-5800 |
| 5 | Facsimile:  (619) 533-5856 |
| | Email: GSchaefer@sandiego.gov |

Attorneys for Defendant
CITY OF SAN DIEGO

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE TYLER, an individual, and KATHERINE RAGAZZINO, an individual, | Case No. 14-cv-1179 GPC (JLB) |
| Plaintiffs, | **DEFENDANT CITY OF SAN DIEGO'S MOTION FOR A PROTECTIVE ORDER REGARDING PLAINTIFFS' "AMENDED" RULE 30(B)(6) DEPOSITION NOTICE** |
| v. | |
| CITY OF SAN DIEGO; ROBERT FILNER, individually and as the former Mayor of the City of San Diego; and DOES 1 through 10 inclusive, | Judge: Honorable Gonzalo P. Curiel |
| | Magistrate Judge:  Honorable Jill L. Burkhardt |
| Defendants. | |

Defendant City of San Diego is forced, yet again, to seek a protective order from Plaintiffs' Rule 30(b)(6) deposition notice.  The City thought the Persons Most Knowledgeable ("PMKs") issue had long been resolved following its first motion for protective order--the District Court overruled the Plaintiffs' objections to the Magistrate Judge's order limiting the scope of the PMK depositions.  *See* ECF Doc. Nos. 42, 63, & 102.  Alas, such is not the case.  Unhappy with the Court's rulings, Plaintiffs' counsel simply filed an "amended" Rule 30(b)(6) notice expanding the definitions and the scope of the PMK topics.  This action constitutes another gross abuse of the discovery process combined with contempt for this Court's orders.

## I. FACTS

This motion for a protective order is supported by a detail-rich Declaration of the undersigned counsel, George Schaefer. On November 3, 2014, the Plaintiffs served their first Rule 30(b)(6) motion. Schaefer Declaration at Exhibit A. The fact discovery expired on March 1, 2015. ECF Doc. No. 32 at p. 2, ¶ 5. However, the Court extended the deadline for the PMK depositions to March 31, 2015. ECF Doc. No. 63. The parties submitted a joint motion requesting another extension of this deadline to April 30, 2015. ECF Doc. No. 103. In their joint motion, the parties stated: "Plaintiffs intend to depose the City's Persons Most Knowledgeable ("PMKs*") regarding 20 topics*." (Emphasis added.) Following this representation, this Court granted the joint motion and extended the deadline. ECF Doc. No. 107.

On March 16, 2015, the District Court rendered its order overruling Plaintiffs' objections to the limitations placed by the Magistrate Judge on scope of PMK topics. *See* ECF Doc. No. 102. The next day, the undersigned counsel started a two-week jury trial in state court. *Id*. at ¶ 4. Despite knowing that the undersigned counsel was in a jury trial, Plaintiff's counsel, Carla DiMare, served the City on March 23, 2015 with an amended Rule 30(b)(6) motion. *Id*. at ¶ 6, ¶ 7, & ¶ 9 and Exhibit B. The notice set PMK depositions for March 30, 2015 when the undersigned counsel was scheduled to be on leave and when Plaintiffs' previously represented to the Court and counsel that she would be unavailable because of an Independent Medical Examination ("IME") scheduled for one Plaintiff. *Id*. at ¶ 8 and ¶ 9.

The City protested the short notice, the fact that it was served while the undersigned was still in trial, and the fact the depositions were scheduled when the undersigned counsel was scheduled to be on leave. *Id*. at ¶ 10. Shortly thereafter, the City also inquired about whether the wrong amended notice was served because the noticed topics were different from the original noticed topics. *Id*. at ¶ 12. No depositions took place on March 30, 2015; rather, Plaintiffs' counsel attended the

IME of her client on that date. *Id*. at ¶ 13. After additional prodding, Plaintiffs' counsel finally responded on April 9, 2015 that Plaintiffs did intend to proceed forward on the amended notice. Ms. DiMare stated, "I will use the most recent PMK, since you objected to the old one and *the newer one was adopted to address your alleged and purported concerns*." (Emphasis added.) *Id*. at ¶ 15.

The City viewed the amended notice as an attempt to circumvent this Court's orders. The undersigned counsel promptly met and conferred in person with Plaintiffs' counsel over the issue, but to no avail. *Id*. at ¶ 16. Plaintiffs then served the same amended notice for Rule 30(b)(6) depositions for April 27-28, 2015. *Id*. at ¶ 17. Exhibit C. Additional telephonic meet and confer discussions resulted in an impasse over the issue. *Id*. at ¶ 18 & ¶ 19. This motion for protective order follows.

## II. ARGUMENT

Page limitations do not allow for an extended discussion of the radical differences between Plaintiffs' original Rule 30(b)(6) deposition notice and the most recent one. Exhibit A to this motion is a table that captures the differences. The first column of the table sets forth all 21 of Plaintiffs' original PMK topics. The second column includes this Court's limitations. The third column includes the topics from the latest Rule 30(b)(6) notice that somewhat correspond to the originally noticed topics but also include 12 new topics. A careful comparison of the two notices reveals that Plaintiffs have tried to make it look like there are a similar number of topics in each notice, but that is not the reality. For example, in the original notice, topics 4-14 individually listed each City Councilmember's communications regarding Filner's conduct as a separate topic. In the amended notice, these topics are bunched together as one topic found at topic 18.

Additionally, a far-reaching, expanded definition of ""SEXUAL DISCRIMINATION OR HARASSMENT" has been added to the amended notice:

> Harassment includes any unwelcome, unsolicited and/or unwanted behavior which may offend humiliate, embarrass, intimidate

or otherwise cause distress because of a person's protected class. Harassment creates a negative atmosphere that reduces work productivity and morale, undermines the integrity of the workplace and destroys professionalism. Examples of harassment include: the use of derogatory comments, slurs, jokes, pictures, cartoons, or posters. Additionally, sexual favoritism (i.e. preferential treatment to employee(s) who have/had a sexual relationship with any level supervisor) could create a hostile work environment under certain circumstances .... Federal law defines sexual harassment as: unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when: 1) submission to or rejection of such conduct is made either explicitly or implicitly a term or condition of an individual's employment; 2) submission to or rejection of such conduct by an individual is used as a basis for employment decisions affecting that individual; or 3) such conduct has a purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment. ... Sexually harassing conduct can be physical, verbal, visual, or written, and can occur between peers, supervisor to subordinate, subordinate to supervisor, member of the public to employee, and within or across departments. Written examples of sexual harassment include letters, emails text messages blogs, electronic messaging, notes or invitations which may be perceived as sexually suggestive or obscene. Verbal examples of sexual harassment include derogatory comments, insults, slurs or jokes; recounting one's sexual exploits; or starting and spreading rumors about the sex life of an employee.

Other examples of sexual harassment include:

- Sexually suggestive or explicit leering or gestures

- Derogatory, sexually suggestive or explicit objects or pictures, including cartoons, posters or computer graphics

- Unwelcome touching, hugging or massaging

- Blocking or cornering an individual

- Revealing parts of the body when such exposure violates common decency

- Graphic comments about a person's physique

- Job actions taken to pressure an individual into accepting sexual advances

- Remarks or jokes made that a person cannot do the job because the person is a male or female

- In some circumstances, repeatedly asking someone for a date after being turned down.

Sexual harassment by supervisors and managers can include a statement or insinuation that a refusal to provide sexual favors or a rejection of sexual favors will result in reprisal, withholding support

979091                                       4
                                                            14-cv-1179 GPC (JLB)

for appointments, promotions or transfers, failure of probation, change of assignments, a poor performance rating, or other adverse employment action .... If one's behavior is harassing to an individual or group of individuals, it does not matter that the harasser failed to recognize the behavior as harassing."

Plaintiffs' claim that such a definition is necessary because this Court neglected to include a definition of "conduct of a sexual nature." Schaefer Decl. at ¶ 18. This is absurd and requires no response.

Plaintiffs are not entitled to circumvent the Court's limitations on PMK depositions for two reasons. First, they waived any right to do so when their lawyer represented in the joint motion that the requested extension of the deadline to April 30, 2015 was for the original 20 topics. Second, their amended notice, first served 8 days before the March 31, 2015 discovery cut-off, was not reasonable notice. In the case of *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D. Ill. 2005), the court held that 10 business days' notice in a complex litigation case for two witnesses' depositions was unreasonable. That court observed that Rule 30(b)(1), Federal Rules of Civil Procedure, requires "reasonable notice" of depositions. "Obviously no fixed rule can be laid down because much will depend on the other circumstances of the particular case." *Id*. at 327 qouting 8A C.Wright, A.Miller & R.Marcus, Federal Practice & Procedure: Civil § 2111 (1994). Although this is not a complex case, 8 days notice before a cut-off served on opposing counsel in trial for so many PMK witnesses and topics is unreasonable.

Plaintiffs' ill-advised attempt to make an end run around the discovery cut-off should be denied. *See Mondares v. Kaiser Foundation Hospital*, 2011 WL 5374613 (S.D. Cal., November 11, 2011). The Court would be well within its discretion to impose sanctions on Plaintiffs' counsel for these latest shenanigans.

Dated:  April 17, 2015        JAN I. GOLDSMITH, City Attorney

By: s/ George F. Schaefer
George F. Schaefer
Deputy City Attorney

Attorneys for Defendant City of SD

979091

5

# CERTFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; and that I served the following document(s):

- **DEFENDANT CITY OF SAN DIEGO'S MOTION FOR A PROTECTIVE ORDER REGARDING PLAINTIFFS' "AMENDED" RULE 30(B)(6) NOTICE**

- **DECLARATION OF GEORGE SCHAEFER IN SUPPORT OF DEFENDANT CITY OF SAN DIEGO'S MOTION FOR A PROTECTIVE ORDER REGARDING PLAINTIFFS' "AMENDED" RULE 30(B)6 MOTION**

on the individuals listed below in the manner indicated.

## Electronic Mail

I served the following by electronic mail at the e-mail addresses listed below:

- **Harvey C Berger**
  berger@popeberger.com,alcaraz@popeberger.com,stout@popeberger.com

- **Carla DiMare**
  cdimare@att.net

Executed: April 17, 2015, at San Diego, California.

        s/George F. Schaefer
        **GEORGE F. SCHAEFER**
        E-mail: GSchaefer@sandiego.gov